## Finlay *versus* Stewart.

1. A contract for the purchase of land in which the vendees agreed to pay to the vendor "$3000 on the 15th of March, $10,000 on the 1st of May, and the balance on the 1st of June, or else this contract to be null and void," did not give an option to the vendees to pay any of the sums or not. The last clause was for the protection of the vendor, not a release of the vendees from their covenants.

2. One of the vendees paid the first instalment; *held*, that this was not a voluntary payment, and his co-vendee was liable for contribution.

3. One of two vendees took an assignment to both of a contract for the sale of land. *Held*, that although the other was not present, or did not at the time assent, yet if he had given previous authority, or subsequently ratified the act, he was liable for contribution to his fellow, who had paid part of the purchase-money.

4. The court charged: "The proper remedy to settle partnership accounts of an ordinary character is by action of account-render, or by bill in chancery; but when the transaction is a single transaction, where no questions are involved in regard to the right of creditors, and especially when the subject-matter is real estate, and one part-owner has advanced the money, he may sustain the action of assumpsit." *Held* to be correct.

5. In order to maintain an action for contribution by one joint contractor against another, it is not necessary that there should be a technical partnership.

6. If evidence is admissible at any stage of a trial, the fact that it was received in rebuttal is not assignable for error.

7. A rule of a court required that defendants should file a specification of items with a plea of set-off; a defendant filed a specification with his affidavit of defence, but not with his plea. *Held*, that he could not give evidence of the items.

8. A defendant cannot file a bill of items with his plea at the time of trial.

November 6th 1867. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Error to the Court of Common Pleas of *Armstrong county*: No. 95, to October and November Term 1867.

This was an action of assumpsit, commenced January 16th 1866, by David Stewart against J. B. Finlay. The declaration was on the common counts, and there was filed with it a bill of particulars for one-half of certain advances, alleged to have been made by the plaintiff on the joint account of himself and the defendant. The payments were:—

Cash on contract of purchase of land from D. R.
Burford . . . . . . . $3000
Cash on like contract with W. E. Standart . 5000
Cash on the same contract, . . . . 2000
Expenses of telegraphing, counsel fees, &c., . 654
Cash paid Professor Bowen, . . . . 200

with interest. The one-half which was claimed to be due from the defendant was $5427, principal.

On the 16th of February and the 9th of March 1866 the

defendant filed affidavits of defence accompanied by a bill of par-
ticulars, of an alleged indebtedness to himself amounting to
$4118.

To this the plaintiff filed a counter affidavit, setting forth that
the affidavit of defence is in whole and in every part and particu-
lar wrong, unjust and wholly untrue, and that the items of set-off
therein set forth, amounting in all to the sum of $4118, are each
and every one of them and the whole thereof wrong, unjust and
untrue ; and this plaintiff does verily believe, that great injustice
will be done him unless said defendant be compelled to produce
his books and subject himself to a cross-examination, or be held
to strict proof of his claim.

On the 10th of April 1866, the defendant pleaded " non assump-
sit, payment, set-off with leave, &c.," but filed no specification of
the intended matters of set-off, or of the facts intended to be
proved under the pleas.

The rule of the court below requires a defendant pleading set-
off, unless the matter of defalcation be particularly set forth in
his plea, to file with his plea a specification of the intended mat-
ters of set-off, &c., and he can give no evidence of any matter of
set-off not particularly mentioned in the plea or specification.

On the trial before Buffington, P. J., the plaintiff gave in evi-
dence an agreement dated March 1st 1865, executed by David
Burford of the one part and the plaintiff and defendant of the
other part, by which Burford agreed " to sell" to them, and they
agreed " *to purchase*," two tracts of land, " in consideration
whereof said Stewart and Finlay hereby agree to pay $100,000
therefor, as follows, to wit, $3000 on the 15th March 1865 ;
$10,000 on the 1st of May 1865 ; and the balance on the 1st of
June 1865, or else this contract to be null and void."    Also a
receipt by Burford on the 15th of March 1865, from " Finlay and
Stewart, by the hand of D. Stewart," for $3000, in full of the
first-named payment.    He also gave in evidence an article of
agreement made February 2d 1865, by which Jacob and John
Whitman agreed to sell to S. F. Yeager a tract of land in Sugar
Creek township, Venango county, for $25,000, to be paid on the
1st of April then next, as the deed and title-papers could be per-
fected, and to convey to Yeager or parties he may name ; con-
cluding, " it is further agreed, that if the party of the second
part fails to comply with the terms of this article, then the same
to be null and void and of no effect.    And it is further agreed
that in case the second party fails to pay in accordance with the
above specifications, then this agreement shall be null and void,
and no more binding on either party."

On this agreement were the following endorsements :—

" For and in consideration of $5 in hand paid, I hereby assign

[Finlay *v.* Stewart.]

and transfer to E. W. Standart, in joint act, his heirs and assigns, all my right, title, interest and claim to the within article.

"S. F. YEAGER."

"March 13th 1865. For and in consideration of the sum of $5000, I, W. E. Standart, transfer and assign all my interest in the within contract to Dr. J. B. Finlay and David Stewart of Armstrong county, Pennsylvania; the said $5000 this day paid me, the receipt whereof is hereby acknowledged, is to be a credit on the $40,000, the amount to be paid W. E. Standart for the within land. Witness my hand and seal the day and date above given.                                    "W. E. STANDART."

"March 30th 1865. I extend the time on the within contract until 1st day of May, A. D. 1865, to W. E. Standart and others. Witness my hand and seal this 30th March, A. D. 1865.

"JACOB WHITMAN."

"April 25th 1865, I extend the time on this refusal contract until the 1st day of June, A. D. 1865, to W. E. Standart and others.

"JACOB WHITMAN."

"May 19th 1865. I extend the time on this refusal contract, for value received, to W. E. Standart, until 1st day of November, A. D. 1865.                                    "JACOB WHITMAN."

He also gave in evidence two telegrams dated March 6th 1865, from the defendant to S. W. Moorehead, who had an interest in the Sugar Creek land, each saying:—

"Secure the Sugar Creek property. Send me drafts. Have made arrangements for its sale."

Also two letters from Moorehead to Finlay of the same date on the subject of the purchase, and acknowledging the receipt of the telegrams; and other telegrams and letters (including some asking for extension of payments), tending to prove that Finlay took an active part in the contract for the Whitman land, and his assent to it.

The plaintiff called James M. Bredin, Esq., who testified that about March 13th 1865, he drew the assignment from Standart at his office in Franklin, Venango county, at the request of Stewart, Finlay and Moorehead, who were in his office at the time; he also testified that at the same time, he gave a power of attorney to Mr. Finlay to sell lands belonging to him in Butler county. The plaintiff gave evidence of the payments for which the suit was brought, and of the defendant's assent and ratification. The plaintiff having rested, the defendant gave evidence for the purpose of disproving his assent to the Whitman contract. Amongst other things in contradiction of the statements of Mr. Bredin, he gave in evidence the power of attorney from Bredin

to Finlay, referred to in his examination by the plaintiff, which was dated March 1st 1865: also evidence that Finlay was not in Franklin on the 13th of March 1865. He also proposed to prove under his plea of set-off, that he and the plaintiff were in partnership in 1865 in the purchase of other lands, to be followed by proof of the items contained in the bill of particulars attached to his affidavit of defence. The offer was objected to because no specification was filed under the rules of court, and as irrelevant. The offer was overruled and a bill of exceptions sealed. The defendant moved for leave to file with the plea in this case the distinct bill of set-off filed 9th March 1866, with his affidavit of defence. The motion was denied.

He also offered the deposition of Jacob Whitman, which was rejected, because the witness should have been brought into court. No exception was taken to this ruling of the court.

In rebuttal, the plaintiff called Mr. Bredin to prove the time and circumstances of his giving the paper of March 1st 1865, for the purpose of explaining said paper and its date. The defendant objected because the evidence was not rebutting, and it was not competent for the plaintiff to make the explanation proposed. The evidence was admitted and a. bill of exceptions sealed.

The defendant requested the court to charge the jury :—

1. That the contract under date March 1st 1865, between D. R. Burford and David Stewart and J. B. Finlay, imposed no legal obligation on Stewart and Finlay to pay the consideration-money therein set forth, or any part thereof.

2. That if Stewart did pay any amount of money to Burford on said contract, subsequently to the date of the same, in the absence of, or without the knowledge, consent or request of Finlay, such payment was merely voluntary, and would not create any liability on the part of Finlay for contribution.

3. That if the jury believe from the evidence in this case, that the purchase of the Whitman tract of land on or near Sugar Creek was made by the plaintiff, in the absence of and without the assent of the defendant, though the name of the defendant is inserted in the transfer of March 13th 1865, made by Standart, yet no liability by this fact would · fall upon the defendant, and whatever amount the plaintiff then paid would be a voluntary payment only—for any portion of which the defendant is not bound.

4. That there is no evidence in the case showing that the $2000 paid by the plaintiff on the Whitman tract, and for the extension of time, was done by the consent or approbation of the defendant, or that the defendant subsequently assented to the same; and therefore the plaintiff cannot recover any part of said sum.

5. That if the jury believe that a partnership existed between the plaintiff and defendant in 1865, in buying and selling lands,

[Finlay v. Stewart.]

there being no evidence of a dissolution, and no evidence of any settlement of the partnership accounts between them, nor of any balance being struck, there cannot be a recovery in this action by the plaintiff.

6. That if the jury believe that the relation of partners did not exist between the plaintiff and defendant, then the plaintiff cannot recover.

To these points the court answered:—

"1. We cannot answer this point as requested. By the terms of the written contract of the 1st of March 1865, 'Burford agreed to sell, and Stewart and Finlay, of Kittanning, agree to purchase the following tracts of land,' &c. And the contract further stipulates that, 'in consideration whereof, said Stewart and Finlay hereby agree to pay $100,000 therefor, as follows,' &c. By these covenants their express agreement was to pay according to these terms—Finlay as well as Stewart."

"2. We cannot answer this point as requested. We have seen in answer to the 1st point, that Stewart and Finlay were jointly bound to pay the price agreed upon. It is clear that where two or more are jointly bound, they are all liable to the creditor, and if any one pays their liability, or part thereof, it is not a voluntary payment, but made on the contract and in privity with the liability of the other obligors, and clothes him with the right to call upon his co-obligors for contribution and reimbursement."

"3. This point depends mainly on the facts as they may be found by the jury. If Stewart made the purchase of Whitman property, or Sugar Creek tract, without the concurrence of Finlay and for his own (Stewart's) use, and not for their joint benefit, then Finlay would not be liable. But if the contract was made for their joint benefit by previous authority from Finlay, or if subsequently ratified by him, he would be bound. For, having a right to claim the advantages, he would be obliged to comply with the stipulations. And although he may not have been present at the making of the contract, still if made in his name, and subsequently agreed to by him, he would be bound."

"4. This point is a question of fact for the jury. We cannot say there is no evidence, but on the contrary think there is sufficient to leave to the jury, and it is so left."

"5. The proper remedy to settle partnership accounts of an ordinary character is by action of account render, or by bill in chancery; but where the transaction is a single transaction, where no questions are involved in regard to the right of creditors, and especially where the subject-matter is real estate and one part-owner has advanced the money, he may sustain the action of assumpsit, and is not bound to resort to the cumbrous remedy of account render, or the dilatory machinery of a bill in chancery."

"6. If the jury believe the plaintiff and defendant were neither

[*Finlay v. Stewart.*]

partners nor privies, but mere strangers in business to each other, there could be no privity and no recovery. The point is answered in the affirmative if the fact is so found."

The court also said in the general charge :—

* * * "There can be little doubt but a payment entirely made by one joint purchaser of lands purchased for the joint benefit of himself and others, gives a right to demand contribution from the others, proportionally to the interest each was to have in the property. And if in the present instance the contracts were made by both the parties on their joint account, and the money paid by the plaintiff, the law would confer the right to demand and sue for the one-half thus paid."

The verdict was for the plaintiff for $5906.47, and the defendant removed the case to the Supreme Court.

The errors assigned were the answers to the points; the rejection of Whitman's deposition; the admission of the testimony of J. M. Bredin in rebuttal; the rejection of the defendant's evidence to prove his set-off; the refusal of the defendant's motion to amend; and that portion of the general charge above given.

*D. Barclay*, for plaintiff in error, referred to Ozeas *v.* Johnston, 1 Binn. 191; Andrews *v.* Allen, 9 S. & R. 241; Killam *v.* Preston, 4 W. & S. 14; McFadden *v.* Hunt, 5 Id. 468; Lacy *v.* Hall, 1 Wright 360; Brubaker *v.* Robinson, 3 Penna. R. 295; Galbreath *v.* Moore, 2 Watts 86; Van Amringe *v.* Ellmaker, 4 Barr 281; Gillis *v.* McKinney, 6 W. & S. 78; Borrell *v.* Borrell, 9 Casey 492; Wright *v.* Cumpsty, 5 Wright 102; Gilpin *v.* Howell, 5 Barr 41; Duncan *v.* Bell, 4 Casey 516; O'Neal *v.* Rupp, 10 Harris 395; Harris *v.* Commonwealth, 11 Casey 416; Kelly *v.* Kauffman, 6 Harris 351; Act of March 21st 1806, § 6, Purd. 46, pl. 1, 4 Smith's L. 329; Yohe *v.* Robinson, 2 Wh. 155; Franklin Insurance Co. *v.* Finlay, 6 Id. 483; Stewart *v.* Blain, 4 Casey 225; Sharp *v.* Sharp, 13 S. & R. 444.

*J. Gilpin* and *E. S. Golden*, for defendant in error, cited Wright *v.* Cumpsty, 5 Wright 103; Hamilton *v.* Hamilton, 6 Harris 22; Galbreath *v.* Moore, 2 Watts 86; Wall *v.* Fife, 1 Wright 398; McDermot *v.* Laurence, 7 S. & R. 441; Ridgway's Appeal, 3 Harris 181; Ozeas *v.* Johnston, 1 Binn. 191; Killam *v.* Preston, 4 W. & S. 14; Andrews *v.* Allen, 9 S. & R. 241; Lacy *v.* Hall, 1 Wright 360; Gillis *v.* McKinney, 6 W. & S. 78; Borrell *v.* Borrell, 9 Casey 494; Gloninger *v.* Hazard, 6 Wright 401; Smith *v.* Craig, 2 Barr 156; Mills *v.* Buchanan, 2 Harris 61; Wright *v.* Wood, 11 Id. 131; White *v.* Leeds, 1 P. F. Smith 189; Ellmaker *v.* Franklin Fire Insurance Co., 5 Barr 189; Erwin *v.* Leibert, 5 W. & S. 105; Daily *v.* Green, 3 Harris

128; Daniel v. Wilver, 12 Id. 520; Covely v. Fox, 1 Jones 171; Moatz v. Knox, Id. 270; Sullivan v. Johns, 5 Wh. 369; Wilson v. Irwin, 14 S. & R. 177; McCay v. Burr, 6 Barr 153; Yost v. Eby, 11 Harris 327.

The opinion of the court was delivered, November 14th 1867, by
STRONG, J.—This was an action to recover one-half of several sums of money which the plaintiff alleged he had paid in discharge of joint liabilities of himself and the defendant. It was therefore an attempt to enforce contribution. One branch of the defence consisted in a denial of the alleged joint liability. To support his case, the plaintiff gave in evidence an agreement between D. R. Burford, on the one part, and Stewart, the plaintiff, and Finlay, the defendant, on the other, signed and sealed by all the parties, by which Burford agreed to sell, and Stewart and Finlay agreed to purchase, three tracts of land, containing together about five hundred and fifty acres. By the agreement, Stewart and Finlay covenanted to pay for the land " one hundred thousand dollars, as follows, to wit, three thousand dollars on the 15th of March 1865, ten thousand dollars on the 1st of May 1865 and the balance on the 1st of June 1865, or else this contract to be null and void."

On the day appointed, March 15th, Stewart, the plaintiff, made the first payment of $3000, the one-half of which he claimed to recover in this suit. In reference to this, the defendant requested the court to charge the jury that the contract between Burford and Stewart and Finlay imposed no legal obligation upon the vendees to pay the consideration-money set forth therein, or any part thereof, and hence that if Stewart did pay any money on the contract subsequent to its date, in the absence of, or without the knowledge, consent or request of Finlay, such payment was voluntary, and created no liability on the part of Finlay for contribution. The court refused so to charge, and this is assigned for error. We do not understand the contract as contended by the plaintiff in error. It was not a mere refusal of the land to the vendees, which they might take or not at pleasure. They agreed to purchase, and bound themselves to pay on certain specified days. Certainly, when the payment of the $3000 was made, the contract was not null, and, if not, the vendees were then jointly bound to pay. The concluding clause following the covenant to pay in these words " or else this contract to be null and void," was introduced for the benefit of the vendor, as a stimulant to prompt payment of the agreed price, not as a release of the vendees from their express covenants. It was in effect as if the vendor had said, " if you do not pay as you have covenanted, you shall have no right under this contract." The attempt to

use it now as giving an option to the covenantors to pay any of the sums mentioned, even the first, or not to pay at all, is a perversion of its purpose. And even if there was an option given, it must be held as applying only to the last payment, that fixed for the 1st of June, for the language of the covenant, being that of the covenantors, is to be construed most strongly against them. The instruction asked for in the defendant's 1st and 2d points was therefore correctly refused.

The 3d point presented by the defendant relates to the purchase of another tract of land, a tract known as Whitman or Sugar Creek. That tract had been sold by Whitman, by articles of agreement, to S. F. Yeager, for the sum of $25,000, to be paid on the 1st of April 1865, or as soon thereafter as the deed and title papers might be perfected, with a stipulation that the contract should be null and void, and no more binding on either party, in case the vendee failed to pay in accordance with its terms. Yeager assigned his interest to Standart and others, and on the 13th of March 1865 Standart assigned his interest to Finlay and Stewart for the consideration of $5000. This sum was paid by Stewart, and the time for completing the contract was subsequently extended, as the evidence tended to show, at the instance of Finlay. There was some contrariety in the evidence respecting the question whether Finlay was present and assenting to the arrangement when the assignment was made to him and Stewart. In reference to this state of the proofs, the defendant's 3d point was proposed as follows: "That if the jury believe, from the weight of the evidence in this case, that the purchase of the Whitman tract of land, on or near Sugar Creek, was made by the plaintiff in the absence of, and without the assent of, the defendant, though the name of the defendant is inserted in the transfer of the 13th of March 1865, made by Standart, yet no liability by this fact would fall upon the defendant, and whatever amount the plaintiff then paid would be a voluntary payment only, for any portion of which the defendant is not bound." It is very obvious that this could not have been unqualifiedly affirmed, in view of the evidence, without error, for if there was previous authority given by Finlay to Stewart to take the assignment on the terms, and as it was taken, or if Stewart's act was without authority, and was subsequently ratified, it became the act of Finlay, even though he was not present at the transaction, and did not *then* assent to it. And this is, in substance, what the court said in answer to the point. The jury were told that if Stewart made the purchase, without the concurrence of Finlay and for his own use, and not for their joint benefit, Finlay would not be liable. But if the contract was made for their joint benefit, by previous authority from Finlay, or if subsequently

[Finlay v. Stewart.]

ratified by him, he would be bound; that although he may not have been present at the making of the contract, still, if made in his name and subsequently agreed to by him, he was bound by it. And it was submitted to the jury to find how the facts were respecting previous authority, or subsequent ratification. While therefore the point was negatived in the words in which it was presented, the plaintiff in error had all the benefit of it to which he was entitled.

Another assignment of error is that the court, in denial of the 4th point of the defendant, left to the jury to find whether $2000, paid by the plaintiff for an extension of time on the Whitman contract, was paid with the consent and approbation of the defendant, or whether the payment was subsequently assented to by him.

It is said there was no evidence to warrant such a submission. We think, however, there was very convincing evidence, both of his assent to the payment, and of his subsequent ratification of it, to be found in the testimony of James M. Bredin, and in the telegrams afterwards transmitted by him.

The other points presented by the defendant were intended to raise the question whether the plaintiff had not mistaken his remedy in suing in assumpsit, instead of account render.

The court was asked to charge that if the jury believed, from the evidence, that a partnership existed in 1865, between the plaintiff and defendant, in buying and selling lands, there could be no recovery in this action, there having been no evidence of any dissolution, or settlement of the partnership accounts, or balance struck. The point did not inquire what would be the law if the Burford tract and the Whitman tract had been bought in partnership. Yet it is obvious those purchases may have been joint and not partnership transactions, though a partnership in regard to other lands may have existed. This, however, was not noticed by the court directly.

The point was answered substantially thus: The proper remedy to settle partnership accounts of an ordinary character, is by an action of account render, or by bill in chancery. But when the transaction is a single one, when no questions are involved in regard to the rights of creditors, and especially when the subject-matter is real estate, and one part owner has advanced the money, he may sustain the action of assumpsit. This we regard as a correct exposition of the law as it is held in this state, vindicated by several decisions already made. Among them are Gillis v. McKinstry, 6 W. & S. 78; Borrell v. Borrell, 9 Casey 492; Wright v. Cumpsty, 5 Wright 111. The answer was therefore as favorable to the defendant as he had a right to demand—and so was the answer to the 6th point. It certainly is not true that it was essential to the plaintiff's recovery that the

[Finlay *v.* Stewart.]

technical relation of partnership had existed between him and the defendant. There may have been a privity quite short of partnership and yet sufficient to entitle the one to contribution from the other.

This disposes of all the assignments of error to the charge. They are one and all without merit. We pass now to the consideration of the exceptions taken to the admission or rejection of evidence.

The 1st is to the rejection of the deposition of Jacob Whitman. No. bill of exceptions appears to have been sealed to this ruling of the court. And, if there had been, it could not have availed the defendant. The deposition was impertinent to anything in issue in the cause.

The 2d is that the court permitted the witness Bredin to be recalled to prove the time and circumstances of giving a paper, already in evidence, for the purpose of explaining said paper and its date. To this the defendant objected; first, that the evidence was not rebutting; and, secondly, that it was not competent for the plaintiff then to explain what was proposed to be done. Of the first objection, it may be said that if the evidence offered was admissible at any stage of the trial, the fact that it was offered and received in rebuttal when it should have been in chief is not assignable in error: Quinn *v.* Crowell, 4 Whart. 334; Wilson *v.* Jamieson, 7 Barr 126. And, on looking at the testimony given by the witness, it appears to us that it was entirely legitimate. He made no attempt to explain the paper, merely stating that it was given at the time it bore date. The remainder of the testimony had reference to other matters, proper to go to the jury. This exception is not sustained.

The next exception is that the court rejected defendant's offer to prove that the plaintiff and defendant were in partnership in 1865 in purchasing and selling lands in Armstrong, Venango and Clarion counties, and to be followed by proof of the items contained in the defendant's bill of particulars, as set forth in his affidavit of defence. This offer was made under the plea of set-off, but no specification had been filed according to the rules of the court, without which the rule denied to the defendant any right to make use of a set-off. It must be observed, first, that the offer was not to prove that the plaintiff and defendant had been in partnership in the purchase of the Whitman and Burford lands, the only ones in regard to which the plaintiff made any claim, but it was to show other transactions as preparatory to proof of the items of an alleged set-off. Secondly, it is to be noticed that the offer was entire, and hence, if any part of it was inadmissible, it was not error to reject it when presented as a whole. And clearly proof of a set-off was not admissible in the circumstances of the case. The court rule requires a defendant pleading set-off, unless

[Finlay *v.* Stewart.]

the matter of defalcation be particularly set forth in his plea, to file *with his plea* a specification of the intended matters of set-off, to be in all respects like a bill of particulars required by the rules; and it declares that he shall give no evidence of any matter of set-off not particularly mentioned either in the plea or specification.

No such specification was filed with the plea or set forth in it. But it is said one was filed with the affidavit of defence, and this, it is urged, was a substantial compliance with the rule. We think not. It not having been filed with the plea, the plaintiff had a right to assume that the matters relied upon were abandoned though previously set forth in the affidavit of defence, and he might come to the trial unprepared to meet them. It is often the case that matters of defence set forth in an affidavit of defence are not relied upon in the subsequent trial. But the matter is substantially settled by decisions heretofore made. In Sullivan *v.* Johns, 5 Whart. 366, where it appeared that evidence had been overruled at the trial in the court below, because no notice had been given of the matter intended to be given in evidence under the plea of set-off, though it had been set forth in an affidavit of defence filed, this court sustained the rejection of the evidence.

In delivering the opinion of the court, Rogers, J., said, " It is contended that the affidavit of defence is equivalent to notice, but this will not justify us in dispensing with the positive requirement of the rule of court, which is intended to guard against surprise. As the defendant omitted to give notice, the plaintiff had a right to suppose that all intention of insisting on a set-off had been abandoned." * * * " The rule of court is easily observed, and it is so clearly beneficial that it ought not to be relaxed on slight or frivolous pretexts." So in Erwin *v.* Leibert, 5 W. & S. 105, the same thing was decided in a case where the plea referred to the affidavit of defence; and the remarks of Gibson, C. J., upon the subject are very forcible, intimating that such rules ought to be rigidly enforced, and that equivalents for compliance should not be accepted. Those cases are alike in principle with the one before us. The plaintiff's affidavit in reply to that of the defendant can make no possible difference. He had a right under the rule to be informed in the prescribed mode, when the plea was filed, what items of set-off the defendant then proposed to make use of at the trial; and this not only for protection against surprise, but also that the record might show what had been adjudicated. This assignment of error is therefore overruled.

There remains but one other. Unable to adduce his evidence of set-off because of his failure to comply with the rule of court, the defendant made an effort to elude the rule by moving for leave to file with his plea the specification of items which he had

6 P. F Sᴍɪᴛʜ—13

[Finlay *v.* Stewart.]

filed with his affidavit of defence. The court denied the motion, and of this he now complains. But how was he injured by the denial? Had he been permitted to file the specification as he desired, it would not have cleared the way for proof of the items mentioned in it.

If it would, the rule is but a cheat and a snare. It would be like making notice of special matter given at the trial of the same effect as if given fifteen days before. There is therefore no merit in this complaint.

The judgment is affirmed.