Just Manufacturing Company, Appellant, *v.* Falck.

Argued May 28, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Maurice J. Klein,* with him *Harry T. Devine* and *Loewenstein & Winokur,* for appellant.

*Charles F. Phillips,* with him *Phillips & Phillips,* for appellee.

OPINION BY MR. JUSTICE JONES, June 25, 1946:

The plaintiff sued the defendant for goods sold and delivered. The defendant admitted the liability but interposed a counterclaim for damages for the alleged breach by the plaintiff of another agreement between them. The plaintiff filed a reply and the case was tried in the court below without a jury on the issue joined by the counterclaim and the reply. The learned trial judge found for the defendant and entered a judgment in his favor for the net difference between the counterclaim and the plaintiff's claim. The matter is here on the plaintiff's appeal.

The defendant, Falck, with the aid of the plaintiff, had solicited and procured an order from Daniel J. Keating Co. at a specified contract price for the furnishing and installation of certain kitchen equipment in a building then being erected for the General State Authority at the Philadelphia State Hospital (Byberry). The plaintiff was to supply the defendant with the equipment at a fixed price which left a definitely ascertainable profit for the defendant. The prime contract from the General State Authority required of the plaintiff, as the furnisher of the equipment, "detailed drawings of each piece of equipment, as well as data sheets on all items of standard specialty equipment required

under this work". Admittedly, a complete set of the requisite drawings was never submitted to the General State Authority which had to have them before the necessary priorities for the equipment could be obtained from the War Production Board. The order from the Keating company to the defendant was dated October 2, 1941. The trial court found that as late as August 1942, upon a visit by the defendant and the superintendent of the Keating company to the plaintiff's plant in Chicago, they "found some drawings that had not been submitted to Keating at that date, and also learned that the plaintiff had not started any fabrication work in its shops, although such drawings should have been submitted and such work started months prior thereto". On September 15, 1942, the Keating company cancelled the contract with the defendant. The trial court further found, and there is ample evidence to support the finding, that "The failure to secure priorities was due to plaintiff's failure to submit complete and adequate drawings and specifications, and resulted in an inability to get materials needed". On the basis of the supportable findings, thus made, the trial court concluded that the cancellation of the defendant's contract with the Keating company and the consequent loss to the defendant of his definite prospective profit was due to the plaintiff's breach of its contractual duties.

The appellant does not question the conclusion of the learned court below that the transaction between the plaintiff and the defendant, respecting the kitchen equipment, was a joint business venture from which each of the parties expected to realize a profit with neither sharing in the profit of the other. The findings well justified the conclusion: see *Nolan v. J. & M. Doyle Company,* 338 Pa. 398, 403, 13 A. 2d 59. See also *Kingsley Clothing Manufacturing Company, Inc. v. Jacobs,* 344 Pa. 551, 555, 26 A. 2d 315, which stresses the necessity of a consonant intention in order to create a partnership relation. Such an intention was lacking on the

part of either of the parties to the arrangement here involved. The law of partnership is, therefore, not applicable to the relationship established by the findings in this case: *Kingsley Clothing Manufacturing Company, Inc. v. Jacobs,* supra. The plaintiff's liability rests upon the rule that "Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract . . .": Restatement, Contracts, § 315; see *Bodman v. Nathaniel Fisher & Co.,* 268 Pa. 535, 538-539, 112 A. 99.

The appellant contends that its performance of the contract was excused by the following regulation of the War Production Board, viz., ". . . No Person shall be held liable for damages or penalties for any default under any contract or purchase order which shall result directly or indirectly from his compliance with any rule, regulation or Order of the Director of Priorities". The fact is, however, that the appellant's default was due to its own dereliction and not to any external rule, regulation or order. Had the plaintiff been able to show that it had done all that could reasonably be expected of it in order that the necessary priorities could be obtained, the regulation would have been pertinent. But, that, the plaintiff was unable to do. No governmental regulation had intervened to prevent the plaintiff's completion of the requisite drawings within a reasonable time; and, it was the want of such drawings, and not an order or ruling of the War Production Board, that had prevented timely application for the priorities.

The amount of the defendant's anticipated profit was not in issue: see *Commonwealth Trust Company of Pittsburgh v. Hachmeister Lind Company,* 320 Pa. 233, 238, 181 A. 787. The price for the installed equipment under the contract between the Keating company and the defendant and the agreed price to be received by the plaintiff for furnishing the equipment rendered the

defendant's prospective profit definite and certain, as was known to the plaintiff. That profit constituted the measure of damages for the plaintiff's breach of its undertaking with the defendant: *Wilson v. Wernwag,* 217 Pa. 82, 93, 66 A. 242.

It is unnecessary to consider the question which the appellant also raises as to an alleged lack of compliance with Sec. 4 of the Sales Act. The appellant concedes in its brief that the Sales Act is inapplicable where the relationship between the parties is that of the joint venturers and not buyer and seller. The Sales Act relates to the *sale* of goods and choses in action, as its title indicates.

The judgment is affirmed.